# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1379

## SUCCESSION OF EDWARD P. RACHAL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 37,306
HONORABLE ALFRED A. MANSOUR, DISTRICT JUDGE PRO TEM

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

AFFIRMED.

W. Alan Pesnell
P.O. Box 1794
Shreveport, LA 71166
Counsel for Plaintiff-Appellant:
    Francie B. Rachal

Camille Joseph Giordano
P.O. Box 991
Alexandria, LA 71309
Counsel for Defendant-Appellee:
    Linda K. Babineaux

**PAINTER, Judge.**

Plaintiff, Francie B. Rachal, appeals the judgment of the trial court denying her petition to annul the will of her father, Edward P. Rachal, based on a finding that Plaintiff failed to prove by a preponderance of the evidence that the testator was unduly influenced in the making of the will or that the donation should be annulled for ingratitude.

## FACTS AND PROCEDURAL HISTORY

On September 19, 2006, Edward P. Rachal executed a notarial will leaving his entire estate to his girlfriend of several years, Linda Babineaux. He died on May 18, 2007. On June 7, 2007, four of the testator's children, Francie B. Rachal, Bryan E. Rachal, Stephen E. Rachal, and Mary Rachal Bowyer, sued to annul the will, for appointment of an administrator, and for an accounting. They alleged that the will was invalid as to form, that the testator lacked testamentary capacity, and that he was unduly influenced by Linda Babineaux into making a will in her favor. Only Francie Rachal was present at trial, and the claims of the remaining Plaintiffs were dismissed with prejudice. After hearing testimony and receiving evidence, the trial court dismissed Plaintiff's claims finding that she had not proven her case. After trial, Plaintiff moved for and was granted leave to amend her petition insofar as the petition conformed to the evidence adduced at trial. Plaintiff amended her suit to allege that the donation to Babineaux should be annulled for ingratitude. Plaintiff now appeals, asserting that the trial court erred in failing to annul the testament for ingratitude, undue influence, and fraud.

1

# DISCUSSION

On appeal, Plaintiff appears to have abandoned any assertion that the testator lacked testamentary capacity or that the will was invalid as to form, arguing only that the trial court erred in failing to annul the testament for ingratitude, undue influence and fraud.

The evidence adduced at trial was as follows:

Francie Rachal testified that she was the daughter of Edward Rachal. Her parents divorced when she was ten. She stated that she saw her father approximately once a month or once every other month as an adult but that she saw him less as a child. She admitted that when her father introduced her to Linda Babineaux in October 2004, she was visiting only every two or three months. She further admitted that she did not visit her father in the nursing home in which he lived prior to his death because she did not want to see her sister, Suzette. She did not attend his funeral. Francie stated that Babineaux and her father had a turbulent relationship. She stated that her father visited her in Texas in October 2006, accompanied by Babineaux. At that time, he was recovering from kidney failure. She thought he had changed and was not as independent as he had previously been. She stated that Babineaux appeared to be making decisions for him, for example telling him what he should have to drink. She opined that her father appeared to love Babineaux but that the "love in return was not the same." She stated that she felt Babineaux had unduly influenced her father to make the will because the relationship was volatile and because Babineaux had other romantic partners.

Linda Babineaux testified that she met the testator at a dance club in August 2002. They began dating and had a sexual relationship. She stated that she knew

that the testator considered it to be a serious relationship. She testified that she knew that he loved her, and she loved him. She testified that she did not want to marry and began seeing other people. They broke up for a time but began seeing each other again, and she agreed to a monogamous relationship. He moved into her Lafayette, Louisiana home in August 2004 and, in October of that year, he gave her a ring for her birthday to signify their commitment. He moved out of her house because of problems with her developmentally disabled brother, who lived with her. However, the testator continued to visit her in Lafayette, and she visited him in Alexandria. He gave her gifts of jewelry. On one of her visits to Alexandria, she went with him to his attorney's office. The testator gave his attorney information about what was to go in the will. She stated that she left the room while the will was signed. However, she knew she was the principal legatee. Shortly before he died, the testator executed a power of attorney naming Babineaux as his agent. She stated that while he was in the hospital or the nursing home before his death, she told him that she was dating someone else.

The testator's lawyer, Joseph T. Dalrymple, who drafted the will in question, also testified at trial. He stated that the testator was a longtime client. He opined that at the time he executed the will, the testator seemed to be in full and complete possession and control of his faculties and was the same person he had known for decades. Dalrymple testified that the testator appeared to be tired, not feeling well, and a bit mellower than in the past.

Brook R. Chaney, the social worker at the nursing home the testator lived in at the end of his life, testified that she didn't know he had children until he was dying. At the end, she saw his daughter Suzette there day and night. She further

3

testified that Babineaux was there when she could be. His sister and nephew also visited.

The testator's sister, Roberta Hernandez Roy, testified that her brother was bedridden or in need of full time care for all or most of 2007, and that he spent time in the nursing home and the hospital before his death. She testified that he told her he was leaving his estate to Babineaux. Mrs. Roy's son, Stanley Hernandez, nephew of the testator, also testified. He stated that he visited the testator almost every day during his last illness. Hernandez testified that the testator told him he was leaving everything to Babineaux and that "he was damned if his kids would get a penny." Hernandez stated that he was testifying because it was his uncle's wish that his children not get his estate and that this had been the testator's position for years before his death. He indicated that his uncle could not have been easily persuaded to do anything against his will. Hernandez stated: "I don't care who you were, if he didn't want to do it you could forget it." He also testified that his uncle told him at one point that Babineaux was seeing other men and that he replied by reminding his uncle that he saw other women.

Louisiana Civil Code article 1479 states that:

A donation *inter vivos* or *mortis causa* shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.

After reviewing the evidence adduced at trial, we agree with the trial court that Plaintiff failed to carry her burden of showing that Babineaux substituted her volition for that of the testator.

4

With regard to ingratitude, La.Civ.Code art. 1560 provides that:

Revocation on account of ingratitude can take place only in the three following cases:

1. If the donee has attempted to take the life of the donor;

2. If he has been guilty towards him of cruel treatment, crimes or grievous injuries;

3. If he has refused him food, when in distress.

Plaintiff asserts that Babineaux's action in telling the testator that she was dating someone else while he was confined in the nursing home was cruel treatment such as to require revocation of the will for ingratitude. However, there is no evidence suggesting that the testator was emotionally affected by the information and Babineaux continued to visit the testator in the nursing home. Accordingly, we find that Plaintiff failed to carry her burden of proof in this regard.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiff, Francie B. Rachal.

**AFFIRMED.**